COUP v. McCONWAY & TORLEY CO. et al.

(Circuit Court, W. D. Pennsylvania. January 6, 1904.)

No. 42.

1. PATENTS—INFRINGEMENT—CAR COUPLERS.

The Coup patent, No. 401,775, for a car coupler, occupies a narrow field, and must be strictly limited in construction, being for an improvement on couplers of the well-known Janney type, designed to adapt the same, after the coupling has been made, to track curvature by means of a pivoted connection between the drawhead and drawbar, which allows the drawhead to "swing freely laterally"; and, since both free and nonfree joints were known in the prior art, the patentee must be held to have adopted the former, and the patent is not infringed by a coupler in which the drawhead, while pivotally connected, does not swing freely, but has its movement restricted by side bars and controlled by springs, which hold it normally in a central position.

In Equity. Suit for infringement of letters patent No. 401,775, for a car coupler, granted to John Coup April 23, 1889. On final hearing.

William L. Pierce, for complainant.

Christy & Christy, for respondent.

BUFFINGTON, District Judge. In this case John Coup, the complainant, charges the McConway & Torley Company with infringement of the first and second claims of his patent, No. 401,775, of April 23, 1889, for a car coupler. The invention disclosed in his specification by a patentee is the consideration for which the government grants him a monopoly, and the measure of such monopoly is the claim the government awards him for such disclosed invention. To ascertain, therefore, the rights of the present patentee, we must first see what disclosures had been made by earlier patentees, what new invention Mr. Coup showed, and what claims therefor were awarded him in return for such disclosure. Turning, then to the patent, it must be borne in mind it covered no new field of inventive effort. Some years ago between six and seven thousand patents—more than 1 per centum of the total issue of the government—were for car coupling devices. St. Louis Car Coupler Co. v. The National Malleable Castings Co. (C. C.) 81 Fed. 714; Id., 87 Fed. 891, 31 C. C. A. 265. Nor did the present patentee enter an unoccupied part of such well-covered field, since he only sought to improve on an earlier invention. He states, "My invention * * * has especial reference to couplers of the Janney type, known as 'twin-jaw' or 'rotary vertical-hook' couplers," and the two claims here involved are limited to "a car coupler of the Janney type." This Janney coupler of the twin-jaw or rotary vertical-hook type was an invention of some years' standing. It was patented in 1879; its merits were fully recognized (see Gould Coupler Company v. Pratt [C. C.] 70 Fed. 623); and, on the release to the public of its general features by the respondents, the owners of the patent, so as to permit inventors to use it as a base for subsequent inventions, its contour was standardized and adopted by the Master Car Builders' Association of the United States. It will therefore be seen the patentee's efforts were restricted to a comparatively narrow limit. The Janney coupler had at the end of, and integral with, a rigid drawbar, a drawhead having a bifurcated jaw, with a vertical rotating hook, adapted to engage and interlock with a similar hook on another car, and so form a coupled joint. Such Janney construction is found in the claims here in question, in the element "a swinging hook secured to one of the lateral extensions of the head." In one sense the Janney coupler was automatic, in that, after it was properly set, the brakeman did not, as in the old link and pin device, stand between the cars and guide at the dangerous instant of coupling. Owing, however, to its drawhead and drawbar being integral, the coupler had, apart from the play of its coupled hooks, no capacity to adjust itself to track curvature as the train moved, or to adapt itself to the tangential impact with, and coupling to, its twin, which took place when coupling on a curve. Now, judging from the specifications of his patent, it was this lack of adaptability of the Janney coupler to track curvature when coupled that Coup sought to overcome. His method was to take the Janney coupler of the old art, and, instead of making the drawhead and drawbar integral, and therefore restricted to the mobility of the coupled hooks alone, he pivoted the drawhead to the drawbar, and thus secured the superadded flexibility of a joint at that point. This advantage he specifically points out in his device, which, as he says, allowed "the

drawhead to swing freely laterally in the drawbar outside the framing of the car  *  *  *  in swinging around a curve in the road." Apart from an ice guard, not here material, a lock, placing the joint outside the car frame, which he says himself was a mere mechanical repair advantage, and the back of the curved wall of the joint, which relieved the strain on the joint pivot when the cars struck, no other improvements, advantages, or advances over Janney were pointed out in the specification, other than the joint, which allowed "the drawhead to swing freely laterally in the drawbar  *  *  *  to accommodate the motion of the car in swinging around a curve in the road." Such being the case, it is manifest the patentee's device was not intended to change the coupling per se, but came into play after the coupling was made; and this purpose was effected, not by any change of the Janney hooks, but through a joint which gave mobility to the drawhead as a whole, and such joint was one which allowed the drawhead to swing freely laterally. The object of the patentee was to obtain flexibility, and the flexibility he disclosed was by the use of a free or unrestrained joint. If, therefore, in the prior car coupling art there existed joints both free and nonfree, it would seem the patentee's choice of a free joint—of one so constructed "as to allow the drawhead to swing freely laterally"—was such a selection and adoption of a joint of that type that the claim element of "a drawhead pivotally secured to the drawbar,  *  *  *  substantially as described," should be construed to mean the type of joint the patentee chose, pointed out, and used in describing and disclosing his invention, to wit, a free, unrestrained one. It will be noted that the patentee specified no purpose to modify or improve the capacity or function of the Janney type so as to initially and tangentially couple, but only to modify its action after it was coupled. If, however, his device possessed such unknown or unappreciated capacity, and fitted it for tangential coupling, it would seem unfair to include within his patent other types of devices which effected tangential coupling by the use of a restricted, nonfree, jointed drawhead. And furthermore, inasmuch as the adaptability of the approaching hooks in Coup's device to couple on a curve depends on the position they are each in just prior to contact, it is manifest the lateral free swing of his drawhead must be one which not only leaves the head free to swing to the desired position of alignment where the hooks may couple, but the joint must be free in the further sense that such position shall be for the time being the normal, resting one of the drawhead, and no modifying mechanism will interfere with the unrestrained, free character of the joint, and return the head to another position, and there hold or centralize it. Now, an examination of the prior art shows, first, the use of a joint between a drawbar and drawhead to obtain flexibility on curves; and, secondly, the use of a nonfree or laterally restrained joint in coupling. The relevancy of these references is questioned because these couplers, it is alleged, were not of the Janney type of "twin-jaws" or "revolving rotary knuckles." This to our mind is immaterial. These prior devices show a joint used to connect the drawhead and drawbar, and permit lateral adjustment of moving cars. Their significance lies not in the particular form of

vertical plane coupler therein used, but in the fact that they show a joint between drawbar and drawhead. In the Janney, as well as in other constructions, when a coupling was made the heads became practically solid. Greater flexibility for curve adjustment was sought in a joint connection between the head and bar. Indeed, if the coupling of Janney gave sufficient flexibility after the hooks were coupled, there was no occasion for Coup to resort to joint flexibility. Moreover, the very rigidity of the coupler joint in the prior uses emphasizes the significance and importance of the drawhead joint, in that it shows the latter was employed for a broader purpose than Coup's, namely, to furnish the entire flexibility of the mechanism. Several other patents of later date, but prior to Coup's, show a pivot joint between drawbar and drawhead; but, as an effort was made to carry Coup's invention back to 1883, we cite only these prior references—a course which renders discussion of the proofs to thus carry Coup's invention back needless. The Nunsmaker patent, No. 277,152, of 1883, shows, first, a hook coupler which swings horizontally on a drawhead pivotally connected to a drawbar; and secondly, the drawhead swing is spring-controlled. "This tongue, C, is provided with a U-shaped spring, e, which holds the head, B, in position in the drawhead; and, as the drawheads vary considerably on the different forms of cars and on different roads, this spring adapts itself to these various forms, and holds the head in a central position." McDougal & Shaw, No. 236,054, of 1880, shows a coupler each head of which has a forked end, adapted to project into its fellow and couple by means of pawls. The drawhead and drawbar are connected by a pivot joint to accomplish the same purpose as Coup. Thus "each drawhead is connected with and embraced by a yoke or stirrup, D, which is permanently attached to a car. The drawhead is fixed in the stirrup by a pivot, h, and is therefore adapted to swing laterally to permit of the cars passing around curves." The joint is nonfree, in that its swing is limited. "The amount of lateral movement or swing is limited by two shoulders, i, upon the drawhead, which engage with the yoke, and preclude side movement or swinging to a greater extent than is necessary." And it has a spring mechanism which returns the drawhead to a normally central position. "Each of the drawheads is provided with a rearwardly projecting tailpiece or arm, E, and, in order to hold the drawhead in a central position when not otherwise actuated, this tailpiece has an elastic connection with the yoke."

In view of the prior use of a pivoted joint between the drawhead and drawbar of a car coupler, grave question might be made of the validity of a patent which applied such a joint to the Jenney coupler. But as this case can be put on other grounds, we assume, for present purposes, its validity, but must refuse to give it a broad construction. So regarded, do the respondents infringe? The principal alleged infringing device consists of what is known as a "three-stem coupler." In it we find a drawhead of the Janney type pivotally connected to a central drawbar. But the joint is one which, unlike Coup's, does not "allow the drawhead to swing freely laterally in the drawbar." Such free lateral swinging of the drawhead is restrained in both directions by auxiliary side bars, whose spiral spring attachments serve both to

retard such limited movement, and, when pressure is removed, draw the head back to a central, normal position. The blow of coupling cars is distributed to all three stems, and is cushioned by their respective springs. We cannot hold the respondents to infringe in such construction. It is true, both devices accomplish the same result in one respect—that is, adjustment to curve travel; but in doing so Coup made use of a combination composed of known elements, and one of those elements was a free joint. While the respondents use a joint which is free to the extent of allowing adjustment to curve travel, it is, however, nonfree and self-centralizing, and this for functional purposes. In head centralizing it accomplishes an object which was recognized in the art before Coup, and which he did not see fit to point out or claim in his patent. When he chose to accomplish his object by the use of a free joint, and when a limited or nonfree joint had been used in the prior car coupling art, it is quite clear that he could not cover every form of joint, and preclude the public from using any known form of a nonfree joint in combination to accomplish the same purpose. Indeed, it is here contended that the single stem of Coup's device is not practical, that its free movement not only permitted the drawhead to get out of the alignment essential to coupling, but the force of the impact of cars sheared its single pivot, and that these prohibitive objections to a free joint coupler are avoided by the nonfree joint of the respondents. Be these points as they may; we express no opinion. It is sufficient for present purposes to hold that the nonfree joint of the respondents is a development on different lines from the free joint of Coup, and is another and permissible means to obtain adjustment to track curvature. Thus construing complainant's patent, we find no ground for holding the respondents infringe in the various modifications of the three-stem coupler and the other devices charged.

A decree may be drawn dismissing the bill for noninfringement.